761 N.W.2d 551 (2009)
277 Neb. 275
Don J. INCONTRO, Appellee,
v.
Liane JACOBS, Appellant.
No. S-07-991.
Supreme Court of Nebraska.
February 27, 2009.
*554 Karen A. Bates-Crouch and Christen Carns, Senior Certified Law Student, of Bates-Crouch Law Office, P.C., L.L.O., Omaha, and Eric M. Rees, of Blinn, Rees & Loveland, P.C., L.L.O., for appellant.
Joseph S. Daly and Mary M. Schott, of Sodoro, Daly & Sodoro, P.C., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Don J. Incontro filed a second application to modify child support after previously seeking a modification of child custody. The district court modified Incontro's child support obligation, and the mother, Liane Jacobs, appealed. The Nebraska Court of Appeals reversed, concluding that Incontro failed to show there had been a material change of circumstances in his income that was not contemplated at the time the first modification order was entered. We granted Incontro's petition for further review.

BACKGROUND
On September 17, 2004, the court entered a decree establishing the paternity and custody of two minor children. The parents of the two minor children are Incontro and Jacobs. The court granted custody to Jacobs. Incontro was granted reasonable and liberal parenting time, and he was ordered to pay child support in the amount of $804.82.
For purposes of determining child support, the district court listed Incontro's gross monthly income as $3,145.92, which *555 represented a 57.82 percent contribution to the parties' monthly income. Both parties were ordered to provide health insurance for the children as available through their respective employers. The court ordered Incontro to pay "57.83%" of unreimbursed medical and daycare expenses. The court also granted Incontro the right of first refusal to care for the children whenever Jacobs had to work. This right was later vacated by the court at Jacobs' request.
The record does not reveal any information on how the district court calculated Incontro's gross monthly income. The record shows that Incontro is 50 years old with a license in cosmetology. Incontro testified that he is a self-employed cosmetologist at Hair Technology, Inc. (Hair Tech), a beauty salon. Other evidence in the record reveals that Incontro served as a manager at Hair Tech at some point. In 2004, Incontro and Kelli Renner were the sole owners of Hair Techowning 5,000 shares of stock each. In late 2004, Incontro allegedly gave his shares of stock to Renner as a gift.
Shortly after the paternity decree was entered, Incontro filed an application to modify the paternity decree. The application was not included in the appellate record. Incontro testified that he filed his first application for modification on November 22, 2004. His attorney explained that, at that time, Incontro was seeking custody of the children and, as part of that, sought child support from Jacobs. The court took judicial notice of the application, which was in the court file. The court read into the record that Incontro's application stated: "[I]t's in the best interest of the children that they be placed with [Incontro]." The court also noted that Incontro asked for child support and attorney fees.
The court entered the first modification order on June 5, 2006, increasing Incontro's visitation rights and modifying the delegation of daycare expenses and unreimbursed medical expenses. With regard to medical expenses, the court ordered Jacobs to pay the first $480 of unreimbursed medical expenses incurred on behalf of the children. After that, both parties were to share responsibility for medical expenses in the same percentage as they shared responsibility for child support. The court entered a judgment against Incontro for unpaid, unreimbursed medical expenses and attorney fees and directed that, except as modified, its original decree of paternity was to remain in full force and effect. The modification order did not address any issues regarding Incontro's obligation to pay child support.
On March 23, 2007, Incontro filed a second application to modify the paternity decree. Incontro alleged that there had been a change in circumstances such that his income had been substantially reduced by at least 10 percent. Incontro alleged that this change of circumstances was not contemplated at the time of the entry of the paternity decree. He alleged that this change in financial circumstances had lasted 3 or more months and could reasonably be expected to last for an additional 6 or more months.
The district court conducted a hearing on the second application to modify. At the hearing, Incontro testified that he and Renner were married on November 17, 2004. According to Incontro, Renner "wouldn't marry me to protect her company, unless I signed that company over to her with an agreement that we would both work together and earn money when I was there." On November 17, Incontro signed a "Declaration of Gift," purportedly giving Renner his 5,000 shares of Hair Tech stock. Renner and Incontro eventually dissolved their marriage on May 30, 2007.
*556 Incontro vaguely explained why his income decreased. He testified that his income decreased as a result of losing his clientele and financial hardships in his marriage. Incontro alleged that because he exercised his right of first refusal of visitation at least four times a week until the right was vacated by a court order, his clientele decreased. And because his clientele decreased, his income decreased. He testified that since March 2005, he has tried to rebuild his clientele, but he provided no explanation as to why he has been unable to bring it back to its previous level.
Incontro further testified that because of financial difficulties during his marriage with Renner, Renner started separating all of their finances. As a result, Incontro testified that the only income he received was the income he earned from working at the salon. The only explanation Incontro gave regarding the financial difficulties he suffered was that he could not pay his child support obligation. The record reveals that Incontro is behind on his child support payments.
Incontro's income tax returns show that his gross income was $24,777.60 in 2004, $15,827.50 in 2005, and $9,376 in 2006. Incontro testified that for the first half of the year in 2007, his income was approximately $9,000. In 2005 and 2006, Incontro filed a joint tax return with Renner. In 2006, Incontro and Renner's adjusted gross income was $78,579, and in 2005, their adjusted gross income was $82,745.
Incontro admitted that he had ample opportunity to request a change in child support before the June 2006 modification order was entered. He testified that from June 2006 to August 2007, nothing about his financial situation had changed.
As part of Incontro and Renner's dissolution decree, Incontro received certain benefits. The decree provides:
(a) ... Incontro may remain at the property located at 3873 Gold Street Apt. 1 for 36 months beginning the date of final divorce and expiring in 36 months, free of rent in exchange that he provide all maintenance work, and manage all three apartments.
(b) ... Incontro is allowed to retain employment at Hair Tech ... receive free supplies, free cell phone services, and to include the 36 months free rent provided he does all the maintenance and repairs at Hair Tech.
Items a and b are in exchange for [Incontro's] agreement to honor [t]he Declaration of Gift that was dated November of 2004.
Incontro testified that he did not know how much any of these benefits were worth.
On August 16, 2007, the court entered a second modification order. The court concluded that since the entry of the September 17, 2004, paternity decree, there had been an unanticipated and uncontemplated change in circumstances such that Incontro's income had been reducedresulting in a variation by 10 percent or more downward of his current child support obligation. Thus, the court reduced Incontro's child support obligation to $479.62. The district court also reduced Incontro's percent of unreimbursed medical expenses to 44.41 percent.
The Court of Appeals reversed the district court's second modification order, concluding that Incontro failed to show a material change in circumstances subsequent to the first modification order, which was not contemplated when the first modification order was entered.[1] We granted Incontro's petition for further review.

*557 ASSIGNMENTS OF ERROR
Incontro argues that the Court of Appeals erred (1) in applying principles of res judicata, (2) by determining that the district court erred in finding that there was a material change of circumstances since entering the decree, and (3) by finding that an application to change custody bars a later application to modify child support.

STANDARD OF REVIEW
[1,2] Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion.[2] A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.[3]

ANALYSIS
[3-6] Child support orders are always subject to review and modification.[4] A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.[5] A decree awarding child support will not be modified because of a change of circumstances which was in the contemplation of the parties at the time the original or preceding order was made, but only those anticipated changes which were specifically noted on the record at the time the previous order was entered will prevent modification.[6] A proceeding to modify a child support order is neither a retrial of the original case nor a review of the original decree.[7]
[7] We recognize that Incontro's income had changed by the time he sought custody and child support prior to the entry of the first modification order. However, the Court of Appeals erred in concluding that for this reason alone, Incontro was subsequently barred from seeking a modification of his child support obligations. Clearly, the changes that Incontro relies on in seeking a modification of his child support obligation were not part of the first modification proceedings. The first modification order does not make any mention of child support. From our review of the record, we conclude the facts Incontro alleged in his second application to modify child support based on a reduction in his income were not on the record at the time either the original decree or previous modification was entered. Instead, these facts were introduced to the court at the hearing in August 2007. Further, the June 2006 modification did not address the issue of modifying child support for a change in circumstances based on Incontro's income. As the court noted, the first application for modification asked for child support; however, such a request was obviously contingent upon the *558 court's granting Incontro custody of the children. The court's first modification order ultimately addressed only visitation, daycare expenses, and unreimbursed medical expenses. It did not, in any way, reevaluate the child support award.
At this time, Incontro is paying child support based upon his yearly income as it was in 2004, and the focus should be on whether the present circumstances are substantially and materially different than they were when the court established Incontro's child support obligation. As such, the Court of Appeals incorrectly used the June 2006 modification order to determine whether a material change of circumstances had occurred.
[8] Upon reversing a decision of the Court of Appeals, we may consider, as we deem appropriate, some or all of the assignments of error the Court of Appeals did not reach.[8] Thus, we consider whether the district court abused its discretion in finding that there was a material change in circumstances warranting a reduction in Incontro's child support payments. According to Jacobs, Incontro intended to deliberately reduce his income before calculating child support and voluntarily reduced his income by giving away his shares of Hair Tech to Renner as a gift.
[9, 10] The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification.[9] We have said, "`"Material change in circumstances"' in reference to modification of child support is analogous to modification of alimony for `"good cause.'" ..."[10]
[11, 12] Courts may consider various factors to determine if a material change in circumstances has occurred.[11] Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.[12] But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child.[13]
[13-15] In general, child support payments should be set according to the Nebraska Child Support Guidelines.[14] According to the guidelines, "If applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources."[15] As such, in determining the amount of child support a parent is obligated to pay, parental earning capacity is a considered factor.[16] *559 It is invariably concluded that a reduction in child support is not warranted when an obligor parent's financial position diminishes due to his or her own voluntary wastage or dissipation of his or her talents and assets and a reduction in child support would seriously impair the needs of the children.[17]
In Schulze v. Schulze,[18] we reversed the order of the trial court, which reduced the amount of the noncustodial father's child support obligation. At the entry of the marital dissolution decree, the father was in a partnership that owned a painting business. Subsequently, the father dissolved his painting business because he desired to become a nursing assistant. The father alleged that his job change from a painter to a nurse's aide decreased his adjusted gross income from $37,522 annually to $7,400 annually. We concluded that the father's earning capacity had not altered and diminished after the initial decree.[19] We stated that "the reduction in [the father's] income is attributable to his personal wishes and not the result of unfavorable or adverse conditions in the economy, [his] health, or other circumstances affecting [his] earning capacity."[20] Thus, we concluded that there was no material change of circumstances warranting a modification of the child support payments.[21]
[16] Our de novo review of the record reveals that similarly in this case, Incontro did not meet his burden to show that a material change in circumstances has occurred which warrants a reduction in his child support obligation. Incontro testified that his income started to decrease when the original custody decree was entered because he exercised his right of first refusal "every day [he] possibly could, which was four days," and that this caused him to lose clientele. However, Incontro's right of first refusal was terminated by the court in March 2005. When asked to explain why his income has decreased, Incontro could only explain as follows:
I had a lot of money problems in my marriage, so things had started being separated by ... Renner. So the money that I was actually earning was the money that I made behind the chair, so I was more going on my own because of disputes and arguments within my marriage.
Further, the record reveals that Incontro gave Renner his 50-percent share of stock in Hair Tech for no valuable consideration. However, in Renner and Incontro's dissolution of marriage decree, the court ordered that Incontro receive certain benefits in exchange for Incontro's honoring the "Declaration of Gift" dated November 17, 2004. While Incontro failed to produce documentation that would reflect the precise amounts, it is clear that his income decreased after he voluntarily gave to Renner his shares in Hair Tech.
From these facts, we conclude that Incontro has not shown how his income has reduced through no fault of his own. Rather, the record indicates that Incontro's income decreased due to his own personal wishes, and not as a result of unfavorable or adverse conditions in the *560 economy, his health, or other circumstances that would affect Incontro's earning capacity. While the amount of Incontro's income has changed from the entry of the original child support order, he has failed to prove a change in his earning capacity. And, as far as the record reflects, the needs of the children remain the same as they existed when the district court entered the original paternity decree. For these reasons, the district court abused its discretion when it modified Incontro's child support payments based upon Incontro's change in income.

CONCLUSION
We conclude that the Court of Appeals erred in concluding that the district court could not consider Incontro's application to modify the support award because the circumstances allegedly justifying the modification were present at the time of a prior modification that did not consider child support. However, we affirm the Court of Appeals' reversal of the district court's second modification for a different reason. We find that the district court erred in concluding that Incontro had proved there was a material change in circumstances warranting a reduction in his child support obligation.
AFFIRMED.
NOTES
[1] Incontro v. Jacobs, No. A-07-991, 2008 WL 2231060 (Neb.App. May 27, 2008) (selected for posting to court Web site).
[2] Gallner v. Hoffman, 264 Neb. 995, 653 N.W.2d 838 (2002).
[3] Id.
[4] Reinsch v. Reinsch, 259 Neb. 564, 611 N.W.2d 86 (2000).
[5] See, Wilkins v. Wilkins, 269 Neb. 937, 697 N.W.2d 280 (2005); Rhoades v. Rhoades, 258 Neb. 721, 605 N.W.2d 454 (2000).
[6] See Wagner v. Wagner, 224 Neb. 155, 396 N.W.2d 282 (1986).
[7] See id.
[8] Wagner v. Wagner, 275 Neb. 693, 749 N.W.2d 137 (2008).
[9] See Morrill County v. Darsaklis, 7 Neb.App. 489, 584 N.W.2d 36 (1998).
[10] Schulze v. Schulze, 238 Neb. 81, 85, 469 N.W.2d 139, 142 (1991).
[11] Id.
[12] Rhoades v. Rhoades, supra note 5; Swenson v. Swenson, 254 Neb. 242, 575 N.W.2d 612 (1998).
[13] See Wagner v. Wagner, supra note 6.
[14] Claborn v. Claborn, 267 Neb. 201, 673 N.W.2d 533 (2004).
[15] Neb. Ct. R. § 4-204.
[16] See, Neb.Rev.Stat. § 42-364(4) (Reissue 2008); Schulze v. Schulze, supra note 10.
[17] Sabatka v. Sabatka, 245 Neb. 109, 511 N.W.2d 107 (1994); Schulze v. Schulze, supra note 10; Grahovac v. Grahovac, 12 Neb.App. 585, 680 N.W.2d 616 (2004).
[18] Schulze v. Schulze, supra note 10.
[19] Id.
[20] Id. at 86, 469 N.W.2d at 142.
[21] Id.