IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

KOUBA V. KOUBA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHELLE KOUBA, APPELLEE,
V.
SHANE KOUBA, APPELLANT.

Filed August 26, 2014.    No. A-13-859.

Appeal from the District Court for Cass County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Marian G. Heaney, Scott M. Mertz, and Lang Chao, Senior Certified Law Student, of Legal Aid of Nebraska, for appellant.

Sean M. Reagan and A. Bree Robbins, of Reagan, Melton & Delaney, L.L.P., for appellee.

MOORE, PIRTLE, and RIEDMANN, Judges.

MOORE, Judge.

Shane Kouba appeals from an order of the district court for Cass County which dismissed Shane's application for modification of his child support obligation. As explained below, we affirm the district court's dismissal of the application to modify child support based upon Shane's failure to prove a material change in circumstances since the entry of the decree. Shane also contends the district court erred when it entered a previous order finding him in contempt and imposing a purge plan following his admission to the allegations of Michelle Kouba that he was delinquent in his child support obligations. Because Shane did not timely appeal from the contempt order, we are without jurisdiction to address his argument regarding the contempt order.

FACTUAL BACKGROUND

On July 20, 2012, Michelle and Shane's marriage was dissolved by a decree of dissolution. By the parties' agreement and parenting plan, Michelle was awarded custody of the

- 1 -

parties' four minor children and Shane was ordered to pay $798 in monthly child support. Shane's child support obligation was based upon a monthly income of $2,598 attributed to him.

Michelle filed an application for contempt after Shane was not able to fulfill his child support obligations. On March 22, 2013, the district court held a hearing on Michelle's application and both parties were represented by counsel at the hearing. Michelle asserted three bases for Shane's contempt: (1) failure to pay child support, (2) failure to hold Michelle harmless for a debt, and (3) having nonrelated adults in his house during his visitation with the children. Michelle's counsel stated that Shane was delinquent $10,115 in his child support obligation at the time of the hearing.

Counsel reported to the court that Michelle and Shane had reached an agreement which included Shane's admitting that he was in contempt. The agreement allowed the court to impose a sanction with a purge plan that would require Shane to start making his child support payments on May 1, 2013, and include an additional $50 toward the delinquent obligation. Shane confirmed the agreement. Thereafter, the court questioned whether Shane was willing to enter an admission to the contempt citation. The court advised Shane that by entering an admission, he was stating that he was in willful contempt of the court's order, that he was waiving his right to have a hearing during which the allegations in Michelle's application would have to be proved by clear and convincing evidence, and that he was waiving his right to call and confront witnesses. The court also advised Shane that any sanction could be imposed despite the presented recommendation. Shane affirmatively indicated that he understood the rights he was waiving and entered his admission. The court found Shane in willful contempt.

The court ordered Shane to begin making payments toward his regular child support obligation and the $50 purge payment starting on May 1, 2013. The court also found that a sanction of 10 days in jail should be imposed each month if Shane failed to make the monthly payment. On March 28, 2013, the court filed an order containing the above terms. Shane did not appeal from this order.

On May 21, 2013, Shane filed a pro se motion to modify his child support obligation. In his motion, Shane alleged several material changes in circumstances, including that he was unemployed and disabled. Shane disclosed that he had been terminated from his previous employment in April 2012 and was no longer able to work in financial services due to his credit history.

On May 24, 2013, Shane filed a "Motion for Suspension of Sentence Pending Outcome of Modification Proceeding." He requested the court to suspend the contempt sentence because he was unemployed at the time not due to his own fault. Shane also noted that he was receiving treatment for major depressive order, anxiety disorder, and sleep disorder through an outpatient rehabilitation program at a Department of Veterans Affairs (VA) hospital. In addition to the outpatient program, Shane indicated that he was also receiving vocational rehabilitation through the VA hospital. He alleged that jail time would be detrimental and counterproductive to his current treatment plan and efforts to seek gainful employment.

On June 3, 2013, the district court held a hearing on Shane's motion to suspend sentencing. Shane admitted that he was not current on his child support, but argued that the court could not hold him in contempt for future conduct. Michelle objected to Shane's motion. After hearing the parties' statements, the court determined an evidentiary hearing was necessary.

Because it set the matter for an evidentiary hearing, the court stayed Shane's serving of the sentence pending that hearing.

An evidentiary hearing was held on September 6, 2013. During the hearing, the parties' addressed Shane's motion to modify his child support obligation along with the motion to suspend the contempt sentence.

Shane testified that he has not been earning much income since he was terminated from his stockbroker position in April 2012. He acknowledged that he lost this job before the decree of dissolution was entered and that he did not take any measures to change his agreed-upon child support obligation at that time. Shane testified that he had never been unemployed before and that he expected to quickly find other employment. However, his later attempts at securing employment were unsuccessful. Shane attempted to sell insurance door-to-door and maintain foreclosed homes for a bank as an independent contractor, but neither of these ventures was profitable. Shane also stated that he had applied for "a lot of jobs" in the financial industry during that time.

Shane testified that he recently had a disability claim accepted by the VA. From May 1994 to May 1998, Shane served in the Marine Corps and was classified as a veteran of the Gulf War era. He introduced a letter from the VA into evidence which revealed that he would begin receiving a monthly entitlement in the amount of $1,026 on June 1, 2013, because he had been diagnosed with major depressive disorder with sleep disturbance. The VA assigned a 50-percent disability rating to his major depressive disorder condition and an overall rating of 60 percent. Shane was also going through the process of obtaining an apartment through the VA. Shane admitted that he could obtain other employment without jeopardizing his ability to maintain his monthly VA entitlement.

Finally, Shane testified that he did not realize the significance of his earlier contempt admission. He testified that he accepted his attorney's advice to admit to contempt because he was not aware of the willfulness element.

At the close of Shane's presentation of evidence, Michelle moved to dismiss. She argued that Shane had not demonstrated the existence of a material change in circumstances from the time of the decree.

The district court sustained Michelle's motion and denied Shane's application. The court found that Shane was earning approximately $12,312 a year in VA benefits and also had the ability to secure other income without experiencing a reduction in that benefit. The court acknowledged that Shane had attempted to obtain employment in the financial industry, but concluded that he should have made efforts to obtain any possible employment, including basic labor positions. The court reasoned that Shane had four children to help support and should take whatever steps were necessary to earn income. The court concluded that Shane failed to prove the prima facie elements for modification.

With regard to the contempt issue, the district court found that Shane's payment of $300 in cash during the proceedings purged him of the contempt previously found. Shane appeals.

## ASSIGNMENTS OF ERROR

Shane failed to include in his brief a separate section assigning error to the district court's September 6, 2013, order. The Nebraska Supreme Court has emphasized that headings in the

argument section of a brief do not satisfy the requirements of Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014). See *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). Under that rule, a party is required to set forth the assignments of error in a separate section of the brief, with an appropriate heading, following the statement of the case and preceding the propositions of law, and to include in the assignments of error section a separate and concise statement of each error the party contends was made by the trial court. *Id.*

In the body of his brief, however, Shane argues that the court erred in its imposition of the sanction in the contempt order and in failing to modify his child support obligation.

## STANDARD OF REVIEW

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, an appellate court will affirm the trial court's decision absent an abuse of discretion. See *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

Where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), an appellate court may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Samantha L. & Jasmine L., supra.*

## ANALYSIS

*March 28, 2013, Contempt Order.*

Shane argues the district erred when it instituted a purge plan which required him to make a $50 monthly payment toward his child support arrearage in addition to his standard monthly payments, and included a sanction of 10 days in jail for each month he failed to make the required payment. Shane argues that this purge plan is indistinguishable from a future sentence of incarceration without due process of law.

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014).

An order of contempt in a postjudgment proceeding to enforce a previous final judgment is a final order. See *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). In the present case, the order finding Shane to be in contempt and setting forth the purge plan of which Shane complains was entered on March 28, 2013. Neb. Rev. Stat. § 25-1912(1) (Reissue 2008) requires a party to file a notice of intention to appeal within 30 days after the entry of judgment, decree, or final order. Because the court's contempt order was a final order, Shane was required to file an appeal from this order within 30 days. He did not. Therefore, we are without jurisdiction to review the court's contempt order.

*Application to Modify Child Support.*

Shane also argues that the district court erred when it dismissed his application to modify his child support obligation. He argues that the evidence of his disability established a material

change in circumstances that merited a modification of his child support obligation. Because Shane did not assign this as error in his brief, we examine this issue for plain error.

A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). The party seeking the modification has the burden to produce sufficient proof that a material change in circumstances has occurred that warrants a modification. *Id.*

Courts may consider various factors to determine if a material change in circumstances has occurred. *Id.*; *Collins v. Collins*, 19 Neb. App. 529, 808 N.W.2d 905 (2012). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Incontro v. Jacobs, supra*. But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child. *Id.*

The record in this case shows that Shane was terminated from his stockbroker position before the decree of dissolution was entered in July 2012. He nevertheless agreed to a child support obligation based upon his previous income because he believed he would be able to obtain other employment. However, Shane could not obtain other employment in the financial industry and his efforts to secure other income were unsuccessful. In May 2013, just prior to the present proceeding, the VA determined Shane was eligible for monthly disability benefits in the amount of $1,026. Shane testified that these benefits would not be reduced if he found other employment.

The district court determined that Shane did not prove the prima facie elements to establish that a material change in circumstances had occurred. We agree. Shane was unemployed at the time of the decree and has essentially remained unemployed. Shane attempted to earn income from two other sources which proved to be unsuccessful. Although Shane has applied for some jobs in the financial industry, he has not made sufficient efforts to obtain employment outside of that industry. We recognize that the VA has determined Shane has an overall disability rating of 60 percent and has assigned him a monthly disability benefit. However, Shane is not precluded from earning other income while receiving this disability benefit. Nor has Shane shown that he is totally incapable of earning other income due to his disability.

The case of *Bandy v. Bandy*, 17 Neb. App. 97, 756 N.W.2d 751 (2008), is instructive. In *Bandy*, this court determined that a husband's disability pension constituted the entirety of his income for purposes of child support. The terms of the disability pension did not prevent the husband from obtaining other employment. During a hearing prior to trial on the wife's petition for dissolution, the court found the husband in contempt of a temporary order. At the hearing, the husband testified that he had been looking for employment, but his injuries limited his ability to obtain a job. In entering its contempt finding, the court stated the husband could have acquired a part-time job if he wanted to place a priority on paying his child support obligation. At trial, however, the husband testified that his physical limitations and his pain limited his ability to

obtain and maintain other employment. The husband testified that he had acquired other employment after becoming disabled, but was unable to sustain the duties due to his disability.

In its decree, the trial court set the husband's income at the amount of his disability pension and noted that the evidence at trial differed from that at the contempt hearing. The wife appealed, arguing that the court should have imputed additional income to the husband because, despite his disability, he was capable of working and earning additional income. We affirmed, noting that the evidence presented at trial demonstrated the husband was currently incapable of finding other employment through reasonable efforts because of his disability.

Although *Bandy* dealt with the initial determination of child support in a dissolution decree, and not a modification, it is instructive to our present decision. Here, Shane is also disabled and receives a disability pension. Shane's pension similarly does not prohibit him from obtaining other employment. However, unlike in *Bandy*, Shane did not adduce any evidence to show that his disability has fully prevented him from realizing his prior earning capacity or finding other employment in any field. As suggested by the trial court, when we consider Shane's disability income of $1,026 per month, and impute even a minimum wage job to him, he is capable of earning close to the same amount as he agreed was his earning capacity at the time of the dissolution.

Additionally, we highlight the fact that Shane is the father of four children and their best interests require that Shane make every effort to provide support. Because Shane could not establish a material change in circumstances since the entry of the decree, the district court's decision to dismiss his application was not plain error.

## CONCLUSION

We affirm the district court's dismissal of Shane's application to modify his child support obligation. We also find that we are without jurisdiction to address Shane's challenge to the contempt order.

AFFIRMED.