IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LUEBKE V. SPANO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DIANNE LUEBKE, APPELLANT,

V.

ALAN SPANO, APPELLEE.

Filed October 20, 2015.    No. A-15-290.

Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Affirmed in part, and in part reversed and remanded with directions.

Edith T. Peebles and Wm. Oliver Jenkins, of Brodkey, Peebles, Belmont & Line, L.L.P., for appellant.

Darren J. Pekny and Courtney R. Ruwe, Senior Certified Law Student, of Johnson & Pekny, L.L.C., for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Dianne Luebke appeals from the order of the Douglas County District Court which modified custody and child support for the minor child she shares with Alan Spano. We find no abuse of discretion in the modification of custody, but reverse and remand with directions as to the trial court's calculation of child support.

## BACKGROUND

Dianne and Alan were married in March 2004 and separated in July 2005. Their minor child, Sophia, was born in October 2005. On September 21, 2007, the district court entered an

- 1 -

order of custody and child support. At the time, Dianne was living in Omaha, Nebraska while Alan resided in California. The court, therefore, determined that joint custody was not workable and awarded legal and physical custody of Sophia to Dianne. The court found that Alan was a loving and caring father, but his ability to travel was limited; thus, he was awarded parenting time 6 days per month on the second week of each month. Alan was also ordered to pay $2,186 per month in child support.

Alan filed an application to modify custody and child support in April 2012 and an amended motion in July 2014. A modification hearing was held on September 16 and 30, 2014.

Dianne and Alan lived together in California prior to separating. They are both licensed dentists, and they jointly owned a dental office in California where they both worked full-time. When they separated in 2005, Dianne moved to Omaha and gave birth to Sophia. Dianne has not worked since moving to Omaha, and her Nebraska dental license is not currently active. In order to reinstate her license, she needs to complete 1,000 practice hours within 3 years. She testified that there are no openings in clinics from which she can meet the requirements but admitted that volunteer hours would qualify. Dianne still has an active California dental license and estimated that an average dentist working in California would earn approximately $90,000 per year.

Dianne testified that she has not sought other employment while living in Omaha because she wants to get back into the dental field, and she has been busy raising Sophia and taking care of her house. The only income she had at the time of trial was the child support she was receiving from Alan. Alan also purchased the house in which Dianne and Sophia live.

At the time the original order was entered, Alan was a partner at a dental office and was working there full-time. According to his tax returns, he earned $160,350 in 2010. He began to experience pain in his lower back from a degenerative disc and cracked vertebra, which made it difficult to practice dentistry. As a result, he sold the dental practice in 2011 and continued to practice on a part-time basis until he retired in 2014. At the time of trial he was receiving $3,000 per month in benefits from his disability insurance. He also receives approximately $2,300 per month in income from a rental property in California.

Alan testified that since he is no longer working, he has more flexibility and is able to travel to spend more time with Sophia. In the spring of 2014, he purchased a residence in Omaha. The home is very close to Dianne's residence and Sophia's school. He also purchased a vehicle that he leaves at his home in Omaha. Alan testified that his address for tax purposes remains in California, but he spends approximately half of every month in Omaha. Sophia also spent 3 weeks in the summer of 2014 with Alan in California, and the trip went "very well."

Alan said that he has "a very positive relationship" with Sophia, and she enjoys spending time with him and staying overnight at his house. Dianne agreed that Alan has a good relationship with Sophia, they have a strong bond, and they love each other. Alan is actively involved in Sophia's school including participating in the "Watch Dog" program, volunteering in the office, going on field trips, and helping with the carnival. Both Alan and Dianne testified that Sophia is doing very well; she earns good grades and has no medical, emotional, or behavioral issues.

On December 3, 2014, the district court entered an order of modification. It determined that since entry of the 2007 order, a material change of circumstances, not foreseeable by the parties, had developed which required modification of the order. The court found that both parties are fit and proper persons to have custody of Sophia, and that it would be in her best interests that

Dianne continue to have sole legal custody because she lives in Omaha, but that the parties share physical custody. The court also found that a joint physical custody arrangement is in Sophia's best interests. Thus, the court ordered that the parties alternate weeks with Sophia from Sunday at 5 p.m. to the following Sunday at 5 p.m. The court further found that Dianne has an earning capacity of $6,000 per month and Alan has an earning capacity of $14,000 per month. Therefore, Alan's child support obligation was calculated at $584 per month using the joint custody worksheet.

Alan subsequently filed a motion for new trial or, in the alternative, motion to alter or amend, which was denied. It is Dianne, however, who brings this appeal.

## ASSIGNMENTS OF ERROR

Dianne assigns that the district court erred in (1) modifying custody of Sophia, (2) modifying child support, and (3) imputing a monthly earning capacity of $6,000 to her.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). The same standard applies to the modification of child support. *Id*.

## ANALYSIS

*Modification of Custody.*

Dianne alleges that the district court erred in modifying custody of Sophia. She specifically argues that Alan failed to meet his burden of establishing the occurrence of a material change in circumstances and in proving that modifying custody would be in Sophia's best interests. We disagree.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). The party seeking modification of child custody bears the burden of showing a material change in circumstances. *Id*. A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id*.

In the present case, the 2007 order specifically found that although Alan was a loving and caring father, joint custody was not workable at the time due to his limited ability to travel. Alan's ability to travel has significantly increased now that he has sold his dental practice, retired from full-time employment, and purchased a residence in Nebraska. Had those factors been present when the original custody order was entered, the district court would have likely decreed differently. In fact, the record discloses that despite the parties' separation in 2005, at some point thereafter, until February of 2014, they continued to live together in Nebraska as a family unit, co-parenting Sophia, when Alan was not in California. It is also notable that since that time, Alan has consistently exercised his allotted parenting time with Sophia and taken steps to increase the amount of time he is able to spend with her such as purchasing a home near Dianne and near

Sophia's school, volunteering his time at Sophia's school, and seeking to take her on vacations and trips to visit his family in California. We therefore find that the district court did not abuse its discretion in concluding that there has been a material change in circumstances.

Before custody may be modified based upon a material change in circumstances, it must be shown that modification is in the best interests of the child. *Schrag v. Spear, supra*. Neb. Rev. Stat. § 43-2923(6) (Cum. Supp. 2014) requires a court, in determining custody and parenting arrangements, to consider certain factors relevant to the best interests of the minor child, including:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision, abuse and family or household member shall have the meanings prescribed in section 42-903; and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

In addition to these statutory "best interests" factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

In the case at bar, the district court found both Alan and Dianne to be fit and proper parents. They each have a positive relationship with Sophia, and she is doing very well. The fact that Sophia is thriving under the current custody arrangement does not mean her best interests would not be served by modification. See *State on behalf of Savannah E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013) (modifying custody from mother to father was in children's best interests despite that the children were "typical, healthy, well-adjusted children" and had a positive relationship with both parents). A noncustodial parent need not show that actual harm has befallen a child in order to establish that a modification of custody due to a material change in circumstances would be in the child's best interests. *Schrag v. Spear, supra*.

Alan is an involved, loving father who, even though he resides in California, has taken significant steps to increase the amount of time he is able to spend with his minor child. Even Dianne conceded that Alan and Sophia have a close relationship and strong bond. The district court determined that a joint custody arrangement would be in Sophia's best interests, and we cannot find that decision to be an abuse of discretion. Accordingly, we affirm the modification of custody.

*Modification of Child Support.*

In addition to modifying custody, the district court modified Alan's child support obligation from $2,186 per month to $584 per month. The parties and court acknowledged that at

the time the 2007 order was entered, a trial court was not required to include a child support worksheet, and therefore, the calculations and incomes utilized for the parties at that time are unknown. Here, the district court concluded that although Alan and Dianne were both unemployed at the time of trial, they were both educated and capable of earning "substantial incomes." Thus, the court assigned earning capacities to each of them in order to recalculate Alan's child support obligation.

Dianne argues that Alan failed to establish a material change in circumstances with respect to his income and claims that any reduction in Alan's income was done voluntarily. Alan was unemployed at the time of the modification hearing, and his only sources of income were his disability benefits and income from a rental property, a significant decrease from the income he previously earned when working full-time as a dentist. In 2010, the last year he worked full-time at his dental practice, Alan earned approximately $160,000, or $13,333 per month. Thus, by assigning Alan an earning capacity of $14,000 per month, the district court implicitly found that he maintained the ability to work full-time earning his previous salary. Alan's child support obligation was decreased, however, because the district court used the joint custody worksheet.

When a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year, it is a rebuttable presumption that support shall be calculated using worksheet 3. Neb. Ct. R. § 4-212 (rev. 2011).

The district court modified custody so that Sophia spends a week at a time with each parent. Because each party's parenting time equals approximately 182 days per year, and the court ordered joint custody, § 4-212 establishes a rebuttable presumption that support shall be calculated using worksheet 3. Dianne failed to produce sufficient evidence to overcome this presumption. We therefore find no abuse of discretion in using the joint custody worksheet.

*Earning Capacity.*

Dianne claims that the district court erred when it imputed an earning capacity of $6,000 per month to her. We agree.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). The guidelines provide that if applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. *Id*; Neb. Ct. R. § 4-204 (rev.2008). Use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned. *Johnson v. Johnson, supra*. Generally, earning capacity should be used to determine a child support obligation only when there is evidence that the parent can realize that capacity through reasonable efforts. *Id*.

Earning capacity looks at what a parent is capable of earning, rather than at his or her current income and, indeed, is used in lieu of actual, present income. *Freeman v. Groskopf,* 286 Neb. 713, 838 N.W.2d 300 (2013). In *Freeman v. Groskopf*, the Supreme Court upheld the upward modification of child support based on the father's earning capacity. The evidence presented at the modification hearing showed that the father earned $15.23 per hour while working but decided to cease working and return to school full-time. The district court imputed an earning capacity of $15.23 to him despite the fact that he was not earning those wages at the time of trial. On appeal,

the Supreme Court observed that the father left his employment due to his own personal wishes, and not as a result of unfavorable or adverse conditions in the economy, his health, or other circumstances that would affect his earning capacity. See *Freeman v. Groskopf, supra*, citing *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). In other words, he was capable of earning $15.23 per hour, for 40 hours per week, but was choosing not to. Therefore, the Supreme Court held that imputing his prior wages as his earning capacity was supported by the record and properly used to calculate his child support obligation.

In the present action, Dianne worked as a dentist while living in California, and she still has an active California dental license. She voluntarily left her employment and moved to Nebraska when she was pregnant with Sophia. Dianne testified that she is able to obtain a Nebraska license to practice dentistry, although it would require that she first complete 1,000 hours of clinical work. The fact that she has not completed this requirement since returning to Nebraska in 2005 is a result of her own personal wish that she remain home to take care of the house and her child. We therefore find no abuse of discretion in the trial court's decision to impute some level of earning capacity to Dianne; however, we find the evidence insufficient to establish what the level should be.

Dianne opined that an employee dentist working in California would earn approximately $90,000 per year. She testified she did not know how much a dentist in Nebraska would earn. No evidence was elicited from Alan as to Dianne's earning potential. Therefore, the only evidence as to Dianne's earning capacity was as a dentist in California. There is no evidence in the record as to what that would translate to for a dentist in Nebraska. We therefore reverse this portion of the order and remand the cause to the district court for further evidence on this issue. See *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015) (affirming this court's ruling reversing a determination of earning capacity and remanding to the district court for further evidentiary hearing).

## CONCLUSION

We determine that the district court did not abuse its discretion in modifying custody or child support. We reverse the trial court's determination of Dianne's earning capacity and remand the cause for further evidence on this issue.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.