IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


GILLISPIE V. FLEMING


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MICHAEL J. GILLISPIE, APPELLANT,

V.

BRITTANY M. FLEMING, NOW KNOWN AS BRITTANY M. SCHROM, APPELLEE.


Filed May 10, 2022.    No. A-21-718.


Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

John A. Kinney, Jill M. Mason, and Samantha M. Robb, of Kinney Mason, P.C., L.L.O., for appellant.

Jeffrey A. Wagner and Joshua W. Pazderka, of Wagner, Meehan & Watson, L.L.P., for appellee.


PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Michael J. Gillispie appeals from the order of the Douglas County District Court decreasing the child support obligation of Brittany M. Fleming, now known as Brittany M. Schrom. For the reasons that follow, we affirm.

### BACKGROUND

Michael and Brittany were never married and are the biological parents of two children. Michael has sole physical custody of the children, and the parties share joint legal custody, with Michael having final authority in the event of an impasse. Paternity of the children was established in a May 2008 judgment of paternity and order, but that order did not establish child support. In an April 2013 order modifying decree, Brittany was ordered to pay $190 per month in child

support. Brittany's child support obligation was then increased to $1,087 per month in an August 2019 order of modification. At that time, Brittany was employed in the sales department at a Woodhouse auto dealership (Woodhouse), and a child support worksheet attached to the order indicates that Brittany's total monthly income was $7,848.39.

The present action commenced when Brittany filed a complaint to modify on August 28, 2020, alleging a "change in employment out of her control that would make the Nebraska Child Support Guidelines vary by more than ten (10) percent" and that such circumstances "have lasted at least three (3) months and can reasonably be expected to last for an additional six (6) months." On October 2, Michael answered Brittany's complaint, denying the pertinent allegations therein and asserting the affirmative defenses of waiver, estoppel, res judicata, issue preclusion, and unclean hands. Michael also counterclaimed, alleging a material change in circumstances justifying an increase of Brittany's child support obligation. On October 21, Brittany answered Michael's counterclaim, generally denying the allegations therein.

The matter was referred to the child support referee on March 15, 2021, and a trial was held on May 13. At trial, Brittany confirmed that at the time of the 2019 modification, she was earning approximately $7,848 per month. However, Brittany testified to a series of events, occurring both before and after the August 2019 modification order, which ultimately resulted in a marked decrease in her monthly income. At the time of trial, Michael was employed full-time earning $15 per hour, and his income for purposes of calculating child support is not in dispute.

Brittany began working for Woodhouse in 2012 as a "Customer Follow-up," earning $10.50 per hour with no potential to earn commissions. In 2015, Brittany was transferred from customer relations to "accessory sales," which was a "100% commission job." Brittany worked in accessory sales at Woodhouse until February 2019, and it was in that position that Brittany eventually began earning in the range of $7,848 per month. However, effective February 1, 2019, Brittany was involuntarily transferred to a vehicle sales position at Woodhouse.

The vehicle sales position was also 100 percent commission-based, however, Brittany testified that her transfer from accessory to vehicle sales eventually led to a precipitous decrease in her income. Brittany's paystubs reflect gross monthly incomes of $6,180.33 in December 2018 and $4,654.01 in January 2019, both of which consisted of commission earnings from accessory sales. Upon being transferred to vehicle sales in February 2019, Brittany was guaranteed a minimum gross pay of $6,000 for the first three months. Brittany's paystubs show gross monthly incomes of $6,000 in February and $7,010 in March. Aside from the August 6, 2019, modification order indicating a monthly income of $7,848, there is no record of Brittany's gross income in April, May, June, or July. However, Brittany's paystubs show gross incomes of $4,231 in August, $3,775 in September, and $814 in October. After various deductions, including withholding of her child support obligation, Brittany's net income for those three months was $465.62, $60.38, and $347.18 respectively. Brittany voluntarily resigned from Woodhouse on October 11, 2019, and she testified that she did so because she could no longer support her family on the income she was earning there. Brittany admitted that she did not specifically ask management about returning to accessory sales prior to resigning, however, she testified to her understanding that returning to accessory sales was not an option.

Prior to resigning from Woodhouse, Brittany obtained employment at Cox Communications (Cox), and she testified that she was "hopeful to make as much as I did in

accessories at Woodhouse." However, Brittany was "let go" from Cox for unknown reasons in December 2019, and her W-2 shows total earnings of $1,374.42. Thereafter, Brittany enrolled in "real estate school," and she worked part-time as an independent contractor for SAGE Counseling beginning in June 2020. Upon obtaining her real estate license in September 2020, Brittany began working for Ambassador Real Estate (Ambassador). Brittany sold only one property for Ambassador, earning a total gross income of $2,976 in February 2021.

Finally, in March 2021, Brittany began working as a salesperson for "Accessory.parts," an affiliate of "LKQ Corporation," earning a monthly salary of $3,010. Brittany testified it was possible for her to earn some commission at Accessory.parts, although, in the two months that she had been working there prior to trial, she had earned a total of $275 in commissions. Brittany testified that the Accessory.parts position was similar to her accessory sales position at Woodhouse, albeit on a "smaller scale" because Accessory.parts is not a dealership like Woodhouse. Accordingly, even with commissions, Brittany did not expect to earn what she was making in accessory sales at Woodhouse.

After trial, on May 17, 2021, the child support referee entered a report recommending that Brittany's complaint be denied. The referee acknowledged that Brittany was no longer earning $7,848 per month, however, the referee likened the present case to *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009) and *Dworak v. Fugit*, 1 Neb. App. 332, 495 N.W.2d 47 (1992), where, despite an apparent reduction in income, the evidence supported imputing a higher earning capacity to the party owing child support. Reasoning that Brittany's "income decreased due to her own personal wishes, and not as a result of unfavorable or adverse conditions in the economy, her health, or other circumstances that would affect her earning capacity," the referee determined that Brittany's earning capacity remained at $7,848 per month. The referee ultimately concluded that Brittany failed "to rebut her earning capacity as it was at the time of the 2019 Order of Modification" and thus failed to prove a material change in circumstances subsequent to that order.

On May 20, 2021, Brittany filed a notice of exception and request for review in the district court for Douglas County. After hearing, the contents of which do not appear in the appellate record, the district court entered an order of modification on August 10, 2021. The court wrote that it "disagrees with the recommendation of the Referee and finds a material change of circumstances." The court computed Brittany's total monthly income as $3,147.50, which reflects her Accessory.parts base pay of $3,010 plus one half of the $275 in commissions Brittany earned in the two months she had worked there. The court thus reduced Brittany's child support obligation from $1,087 per month to $532 per month. Michael appealed.

ASSIGNMENTS OF ERROR

Michael assigns that the district court erred in (1) determining there was a change in circumstances justifying a change to Brittany's child support obligation, and (2) refusing to use Brittany's earning capacity for purposes of calculating child support.

STANDARD OF REVIEW

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Incontro v. Jacobs, supra.*

Under Neb. Rev. Stat. § 43-1613 (Reissue 2016), a district court is free to accept or reject any or all of a child support referee's findings and recommendations. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). Accordingly, an appellate court's review is limited to whether the district court abused its discretion in the child support ordered. *Id.*

ANALYSIS

A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Id.*

*Material Change in Circumstances.*

Michael first assigns that the district court erred in finding a material change in circumstances. The record is clear that at the time of trial, Brittany was earning a base monthly salary of $3,010 plus commission which was roughly estimated to be $137.50 per month. Michael does not dispute the evidence of Brittany's income at the time of trial. Rather, Michael argues Brittany failed to prove a material change in circumstances justifying modification because any change that occurred "was entirely contemplated at the time the Order of Modification was entered." Brief for appellant at 10. In other words, Michael's position is that Brittany "knew about any change in her income *prior* to the completion of the modification on August 6, 2019," such that she failed to prove a material change in circumstances occurring subsequent to entry of that modification and not contemplated at that time. *Id.* at 9 (emphasis in original). Brittany counters that "[t]he record clearly shows that Brittany's monthly income decreased for 3 subsequent months after the previous modification . . . [t]his reduction in income could not have been predicted by [Brittany] and was not contemplated at the time the previous Order was entered." Brief for appellee at 8.

A decree awarding child support will not be modified because of a change of circumstances which was in the contemplation of the parties at the time the original or preceding order was made, but only those anticipated changes which were specifically noted on the record at the time of the previous order was entered will prevent modification. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009) (citing *Wagner v. Wagner*, 224 Neb. 155, 396 N.W.2d 282 (1986)). In *Wagner*, the court quoted language from a prior case stating that child support will not be modified on the basis of changes that were "necessarily" in the contemplation of the parties at the time the decree was entered. *Wagner v. Wagner*, 244 Neb. at 157, 396 N.W.2d at 284. The court then stated, "we limit that to anticipated changes which were specifically noted on the record at the time," adding the following:

> For example, if the record reflects that orthodontia work on a child was planned for the following year and provisions were made therefor, once the treatment was actually begun and completed, the fact that the custodial parent is now faced with the payment for those

services normally would not support a modification of the decree. On the other hand, the fact that a younger sibling is later found to be in need of similar services is not an anticipated change of circumstances, because it was likely that children of the same family would require such treatment.

*Id.* at 158, 396 N.W.2d at 284.

In the present case, the reduction of Brittany's income was not an anticipated change specifically noted on the record at the time of the 2019 modification order. In fact, the exact opposite appears to be the case. The material change in circumstances justifying the 2019 modification was the fact that Brittany was then earning $7,848 per month, and the order specifically noted that such circumstances "can reasonably be expected to last an additional six (6) months." Thus, rather than noting an anticipated reduction in Brittany's income in the months after the order was entered, the order specifically noted the opposite. Accordingly, we find no merit to Michael's argument that the court erred in finding a material change in circumstances on the grounds that Brittany's reduction in income was contemplated at the time of the 2019 order of modification.

Nevertheless, there remains the question of whether Brittany acted in bad faith to obtain a reduction in income. Michael argues that "Brittany was well aware of her support obligation when the August 6, 2019 Order was entered, yet she left Woodhouse just two short months later, and subsequently bounced from lower paying job to lower paying job." Brief for appellant at 9-10. Michael adds that "Brittany testified that she did not apply for any other positions that might allow her to earn what she had earned when she was at [Woodhouse]." *Id*. at 10. Michael is correct that Brittany responded in the negative when asked on direct examination whether she had "attempted to apply for any other positions that might allow you to earn what you had earned when you were at Woodhouse." However, immediately after that exchange, Brittany also responded in the negative when asked "[a]re you aware of any other positions you could apply for that would give you those kind of earnings?"

Contrary to Michael's suggestions of bad faith, Brittany argues that "[h]er decision to leave [Woodhouse] was due to her inability to financially support herself or her children," adding that she "did not act in bad faith when, due to a reduction of her income from the unreliability of a 100% commission-based job, she chose to seek more stable consistent income." Brief for appellee at 8. We agree. After four years, Brittany achieved relative success earning commissions in accessory sales at Woodhouse. Brittany apparently anticipated similar success earning commissions in vehicle sales, as evidenced by her acquiescence to the child support calculation attached to the 2019 modification. However, when such failed to materialize in the months following the modification, Brittany sought new employment. First, Brittany went to Cox, where she was "hopeful" to earn an income comparable to what she was making in accessory sales at Woodhouse. When that failed, Brittany sought and obtained a real estate license, working part-time in the interim. However, when real estate also failed to materialize the earnings Brittany hoped for, she returned to accessory sales for a different company, albeit earning substantially less than she was at Woodhouse.

There is no evidence that Brittany resigned from Woodhouse for the purpose of evading or reducing her child support obligation. Rather, the record demonstrates that Brittany resigned from

Woodhouse upon experiencing a precipitous decrease in her earning capacity in that position. Prior to resigning, Brittany obtained new employment which she hoped would result in an earning capacity comparable to what she was making prior to being transferred to vehicle sales. Thus, far from demonstrating bad faith motive to reduce her income, the record demonstrates that Brittany resigned from Woodhouse with the motive of increasing her income back to previous levels.

From our de novo review of the record, we conclude Brittany did not act in bad faith to obtain a reduction in her income. Moreover, we conclude that the evidence of Brittany's income at the time of trial demonstrates a material change in her financial circumstances since the entry of the 2019 modification order. Accordingly, the district court did not abuse its discretion in finding a material change of circumstances warranting a downward modification of Brittany's child support obligation.

*Earning Capacity.*

Michael also assigns that the district court erred in refusing to use Brittany's earning capacity for purposes of calculating child support. In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). The guidelines provide that "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income." Neb. Ct. R. § 4-204. Furthermore:

> When imputing income to a parent, the court shall take into consideration the specific circumstances of the parents, to the extent known . . . includ[ing] the parent's residence, employment and earnings history, job skills, educational attainment, literacy, age, health, and employment barriers, including criminal record, record of seeking work, prevailing local earning levels, and availability of employment.

*Id.* Child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in the amount of that parent's support obligation would seriously impair the needs of the children. *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001). However, a child support order does not require a parent to remain in the same employment and child support may be calculated based on actual income when a career change is made in good faith. See *id.* Generally, earning capacity should be used to determine a child support obligation only when there is evidence that the parent can realize that capacity through reasonable efforts. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015).

Aside from Michael's self-serving testimony, there was no evidence as to whether or how the needs of the children would be seriously impaired by a reduction in Brittany's child support obligation. Furthermore, as discussed above, the record fails to demonstrate that Brittany acted in bad faith when she resigned from Woodhouse in October 2019. Michael argues on appeal that "[t]here are certainly job opportunities for people with Brittany's skills and experience where she can earn what she has the capacity to earn." Brief for appellant at 11. However, aside from returning to accessory sales at Woodhouse, which Brittany indicated was not an option, Michael fails to identify any particular positions that Brittany could have but failed to obtain through reasonable efforts. Moreover, even returning to accessory sales at Woodhouse would not necessarily guarantee the same earning capacity due to the inherently speculative nature of commission-based compensation.

Altogether, the evidence on the record fails to demonstrate that Brittany could realize a monthly income of $7,848 through reasonable efforts. Accordingly, we cannot say it was an abuse of discretion to use Brittany's actual income at the time of trial as opposed to her purported earning capacity of $7,848 per month. Accordingly, we affirm the district court's modification of child support using Brittany's total monthly income of $3,147.50.

## CONCLUSION

For the foregoing reasons, we conclude the record fails to demonstrate an abuse of discretion, and the order of the district court is affirmed.

AFFIRMED.