Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/18/2018 09:09 AM CDT

JESSICA RENEE FETHERKILE, APPELLEE, V.
BRANDON LEE FETHERKILE, APPELLANT.

___ N.W.2d ___

Filed February 23, 2018.    No. S-16-1159.

1. **Statutes.** Statutory interpretation presents a question of law.
2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
3. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support or a modification of an existing order of support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
5. **Evidence: Appeal and Error.** In a review de novo on the record, the court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.
6. **Paternity: Statutes.** Paternity proceedings are purely statutory, and such statutes must be strictly construed because they modify the common law.
7. **Judgments: Jurisdiction: Claim Preclusion.** Claim preclusion bars relitigation of any right, fact, or matter directly addressed or necessarily

included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

8. **Claim Preclusion.** The doctrine of claim preclusion bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action.

9. ____. The doctrine of claim preclusion rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause.

10. **Claim Preclusion: Issue Preclusion.** Whether the doctrine of either claim preclusion or issue preclusion applies in any given case is necessarily fact dependent.

11. **Child Support: Parent and Child: Statutes.** Nebraska's statutes do not impose a child support obligation upon any parties except the legally determined parents of a child.

12. **Child Support: Paternity.** Any order imposing an obligation of child support is necessarily a legal determination of paternity.

13. **Child Support: Paternity: Final Orders.** A paternity determination in a support order, under Neb. Rev. Stat. §§ 43-1411 or 43-512.04 (Reissue 2016), is a final judgment on the issue of paternity.

14. **Claim Preclusion: Judgments.** For purposes of claim preclusion, a judgment on the merits is one which is based on legal rights, as distinguished from mere matters of practice, procedure, jurisdiction, or form.

15. **Judgments: Stipulations: Final Orders.** A stipulated judgment operates on the merits and is as final and binding upon the parties as a decree rendered after a hearing on the merits.

16. **Divorce: Courts: Taxation.** A state court having jurisdiction in a dissolution action has the power to allocate tax dependency exemptions as part of the dissolution decree.

17. **Divorce: Taxation.** A tax dependency exemption is nearly identical in nature to an award of child support or alimony.

18. **Child Support: Judgments.** Childcare costs may be awarded as an incident to child support.

19. **Statutes: Legislature: Presumptions: Judicial Construction.** In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Supreme Court construing and applying that legislation.

20. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to

interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

21. **Statutes: Legislature: Intent.** In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

22. **Modification of Decree: Child Support.** Under Neb. Rev. Stat. § 42-364 (Reissue 2016), a court may allow an existing support order to remain in effect without modification after considering whether a modification of the existing order is warranted, rather than making an independent calculation of child support.

23. **Due Process.** Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law.

24. **Due Process: Notice.** Due process does not guarantee an individual any particular form of state procedure; instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.

25. **Constitutional Law: Due Process.** The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.

26. **Child Support.** Child support orders are always subject to review and modification.

27. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

28. **Modification of Decree: Child Support.** Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.

29. ____: ____. The paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child.

30. **Modification of Decree: Child Support: Proof.** The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby.

31. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

32. **Property Division.** Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties.

33. **Property Division: Proof.** The burden to show that a debt is nonmarital is on the party making that assertion.

34. **Divorce: Attorney Fees.** In awarding attorney fees in a dissolution action, a court should consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

35. **Courts: Attorney Fees.** Courts have the inherent power to award attorney fees in certain unusual circumstances amounting to conduct during the course of litigation which is vexatious, unfounded, and dilatory, such that it amounts to bad faith.

36. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

Appeal from the District Court for Pawnee County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Angelo M. Ligouri, of Ligouri Law Office, for appellant.

No appearance for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

FUNKE, J.

Brandon Lee Fetherkile appeals from a dissolution decree entered by the Pawnee County District Court, which dissolved his marriage to Jessica Renee Fetherkile. The court ruled that Brandon was the legal father of Ariana D. and ordered him to

pay child support for Ariana and two other children, pursuant to an order for support in a separate case.

Primarily, Brandon argues that the evidence showed that he was not the biological or legal father of Ariana; so, the court erred in finding that he was Ariana's father and making any order regarding her. Further, he asserts that the court erred in not making an independent determination regarding child support and attaching a child support calculation worksheet to the decree.

We reject Brandon's arguments because the existing order of support was res judicata on the issue of Brandon's paternity and Brandon failed to elicit sufficient evidence to warrant a modification of the existing order of support. Further, because the court did not modify the existing order of support, it was not required to attach a worksheet to its decree. We also find Brandon's remaining assignments of error to be without merit. Therefore, we affirm.

## I. BACKGROUND

Brandon and Jessica were married in June 2010 and separated in March 2013. Jessica filed a complaint for dissolution in December 2014, and Brandon filed a counterclaim, which he labeled a cross-complaint, for dissolution in June 2015. Trial was held in November 2016.

Jessica has three children: a daughter, born in 2013; another daughter, born in 2008; and Ariana, born in 2006. In her complaint and during her direct testimony, Jessica alleged that Brandon was the legal father of all three children. In his counterclaim, Brandon disputed paternity over Ariana and requested genetic testing to determine whether he was the biological father.

In November 2014, in case No. CI 14-12, a separate proceeding in the Pawnee County District Court, the court entered an order for support, based upon a stipulation of the parties. It found that Brandon had acknowledged paternity of all three children, ruled that he was their father, and ordered Brandon to pay Jessica child support.

At the dissolution trial, Jessica requested the court to continue the order of child support from case No. CI 14-12. Nonetheless, upon cross-examination, Jessica testified that Brandon was not Ariana's biological father. Jessica also stated that despite the fact she had put Brandon's name on Ariana's birth certificate, he never signed it, and that Brandon had been pursuing legal adoption of Ariana before the separation. She also acknowledged that Brandon has two other children not born of the marriage, including one which was born around August 2016. Further, the record does not reflect whether the biological testing that Brandon requested was ever performed.

The parties did not contest the division of assets. Jessica requested that the parties equally split all debts incurred before the separation and only debts related to their children after the separation. She testified and entered evidence concerning several debts related to medical expenses for the children. One exhibit, however, was a collection notice for a debt from Jessica's bank account that Jessica testified was incurred before the separation.

Jessica also requested at least $3,000 from Brandon for attorney fees. She stated that she incurred extra expenses in the proceedings because of his delays, failures to appear, last minute continuances, and failure to timely respond to discovery requests, even after her having a motion to compel granted. She presented evidence that she incurred $7,420 of attorney fees for the proceedings.

After the close of the evidence, the court ruled from the bench. In doing so, it stated that it was "not going to change the child support in this case," because Brandon had failed to produce sufficient evidence of his change in income to justify a modification. Further, it explained that Brandon still had the opportunity to seek a modification of the support order by filing for a modification in the prior case. Additionally, the court divided all of the debts submitted into evidence equally, ordered Brandon to pay $3,000 of Jessica's

attorney fees, and ordered that neither party was required to provide insurance for the children.

At a later date, the court signed a decree of dissolution which ordered Brandon to provide child support pursuant to the order of support in effect from case No. CI 14-12. Brandon filed a timely appeal. We removed the case to our docket on our own motion pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court.[1]

## II. ASSIGNMENTS OF ERROR

Brandon assigns, reordered and restated, that the court erred in (1) not attaching a Nebraska child support worksheet to the decree; (2) ordering child support pursuant to a prior order in separate proceedings; (3) not allowing Brandon to present evidence on his cross-claim or respond to Jessica's presentation of evidence; (4) finding that Ariana was a child of the parties; (5) determining custody, parenting time, child support, and expenses of Ariana, because she is not Brandon's child; (6) ordering child support and income tax dependencies based on three children; (7) equally splitting all of the parties' outstanding bank debts; and (8) awarding Jessica attorney fees. He also asserts, restated, that the court's ruling was erroneous because (9) it was unjust, inequitable, and could not be reached as a matter of law and (10) it was contrary to the evidence and the law and constituted an abuse of discretion.

## III. STANDARD OF REVIEW

[1,2] Statutory interpretation presents a question of law.[2] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[3]

[3] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[2] *White v. White*, 296 Neb. 772, 896 N.W.2d 600 (2017).

[3] *Id.*

determinations of custody, child support or a modification of an existing order of support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.[4]

[4] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[5]

[5] In a review de novo on the record, the court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[6]

## IV. ANALYSIS

### 1. BRANDON'S ASSIGNMENTS OF ERROR REGARDING PATERNITY AND CHILD SUPPORT ARE WITHOUT MERIT

Brandon's first six assignments of error concern the issues of paternity, child support, and other determinations regarding Ariana. Brandon contends the court erred in finding Ariana to be his child and making various determinations regarding Ariana as a child of the parties. He also contends that the court violated his due process rights by adopting the order of support in case No. CI 14-12, rather than making its own independent conclusions, and preventing him from presenting evidence to challenge Jessica's case or present his own case. Finally, Brandon contends that the court violated Neb. Ct. R.

---

[4] See, *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017); *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009).

[5] *Id.*

[6] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

§ 4-203 (rev. 2011) by failing to attach a Nebraska child support calculation worksheet to the decree.

### (a) Court Did Not Abuse Its Discretion in Finding Ariana to Be Child of Marriage or Violate Brandon's Due Process Rights

Brandon asserts that the evidence shows that he is not Ariana's father and that nothing in the record supports a finding that he was a legal parent of her, despite Jessica's false accusation in her complaint.

[6] At common law, the father of a child born out of wedlock had no legal obligation to support the child; that common-law rule was changed by legislative action.[7] Actions to determine paternity are governed by Neb. Rev. Stat. §§ 43-1401 through 43-1418 (Reissue 2016). Paternity proceedings are purely statutory, and such statutes must be strictly construed because they modify the common law.[8]

Despite Brandon's assertion, however, the order of support in case No. CI 14-12 was entered into evidence and contained a determination of paternity that, if res judicata on the issue, would have precluded the trial court in this case from making an independent determination on the issue of paternity.

We have not previously considered whether an order of support under Neb. Rev. Stat. § 43-512.04 (Reissue 2008) is res judicata on the issue of paternity. However, we have repeatedly held that any dissolution decree that orders child support is res judicata on the issue of paternity.[9]

[7-10] Claim preclusion bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment

---

[7] *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014), citing *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999).

[8] *Id.*

[9] *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.[10] The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action.[11] The doctrine rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause.[12] Whether either preclusion doctrine applies in any given case is necessarily fact dependent.[13]

As a threshold matter, we must consider whether Ariana's paternity was directly addressed or necessarily included in the order of support in case No. CI 14-12.

[11,12] The issue of paternity was directly addressed in case No. CI 14-12 because the court's order found that Brandon acknowledged paternity and ruled that he was the legal father of Ariana. Further, Nebraska's statutes do not impose a child support obligation upon any parties except the legally determined parents of a child.[14] "'A fundamental fact necessary to sustain an order of child support is paternity by the man judicially obligated to pay such support.'"[15] Thus, any order imposing an obligation of child support is necessarily a legal determination of paternity.[16]

Next, we must apply the four-factor test to determine if the order of support was res judicata. First, we consider whether the judgment in case No. CI 14-12 was rendered by a court of competent jurisdiction.

---

[10] See *In re Interest of Noah B.*, 295 Neb. 764, 891 N.W.2d 109 (2017). See, also, *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994).

[11] *In re Interest of Noah B., supra* note 10.

[12] *Id.*

[13] *Id.*

[14] See *Stacy M. v. Jason M.*, 290 Neb. 141, 858 N.W.2d 852 (2015).

[15] *Cross, supra* note 7, 257 Neb. at 781, 600 N.W.2d at 784, quoting *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985).

[16] See *Stacy M., supra* note 14.

The order of support does not make clear whether the State of Nebraska initially filed the action as a paternity suit, under § 43-1411, or if it petitioned for child support directly, under § 43-512.04.

Under § 43-1411, a paternity action "may be instituted, in the court of the district where the child is domiciled or found . . . by . . . the state, either during pregnancy or within eighteen years after the child's birth." Further, § 43-1412 provides:

> (1) . . . .
>
> If it is determined in this proceeding that the alleged father is actually the father of the child, a judgment shall be entered declaring the alleged father to be the father of the child.
>
> . . . .
>
> (3) If a judgment is entered under this section declaring the alleged father to be the father of the child, the court shall retain jurisdiction of the cause and enter such order of support . . . which the court in its discretion deems appropriate to be paid by the father, as may be proper under the procedure and in the manner specified in section 43-512.04.

Section 43-512.04(1) provides that "[a]n action for child support or medical support may be brought separate and apart from any action for dissolution of marriage. The complaint initiating the action shall be filed with the clerk of the district court and may be heard by the county court or the district court . . . ."

As set out in § 43-1412(1), "[t]he alleged father and the mother shall be competent to testify." But the testimony of the party that initiated the proceedings "shall not alone be sufficient to support a verdict or finding that the alleged father is actually the father."[17]

The order in case No. CI 14-12 states that the matter was submitted upon the oral stipulation of the parties. Further,

---

[17] § 43-1412(1).

nothing in the record suggests that either party contested the court's subject matter jurisdiction over the issue of paternity or the court's personal jurisdiction over the parties. As a result, under either statute, the Pawnee County District Court was a court of competent jurisdiction to determine the issue of paternity.

[13] Second, we consider whether the paternity determination in case No. CI 14-12 was a final judgment. In *DeVaux v. DeVaux*,[18] we held that a paternity determination contained in a dissolution decree was a final judgment. We reasoned, in part, that parties have a full and fair opportunity to litigate the issue of paternity in such proceedings and that "unlike alimony, child support, custody, or ground for divorce, paternity is not subject to change."[19] We find both of these reasonings to apply to paternity determinations under §§ 43-1411 and 43-512.04 with equal force. Thus, the paternity determination in case No. CI 14-12 was a final judgment.

[14,15] Third, we must determine whether the paternity judgment decree was a judgment on the merits. For purposes of claim preclusion, a judgment on the merits is one which is based on legal rights, as distinguished from mere matters of practice, procedure, jurisdiction, or form.[20] A consent decree or consent judgment operates on the merits and is as final and binding upon the parties as a decree rendered after a hearing on the merits.[21] We see no reason why this principle would not extend to stipulated judgments on the merits. Accordingly, while case No. CI 14-12 was submitted to the court by stipulation, it was a determination on the merits of the case, rather than a judgment on mere technical grounds.

---

[18] *DeVaux, supra* note 10.

[19] *Id.* at 618, 514 N.W.2d at 645-46, citing *Dept. of Human Services v. Lowatchie*, 569 A.2d 197 (Me. 1990).

[20] See *DeVaux, supra* note 10.

[21] *Blazek v. City of Omaha*, 232 Neb. 562, 441 N.W.2d 205 (1989). See, also, *DeVaux, supra* note 10.

Fourth, there is no dispute that both Brandon and Jessica were involved in case No. CI 14-12. While the action was initiated by the State and Jessica was a third-party defendant, the order of support states that both Brandon and Jessica were represented by counsel who appeared before the court.

Accordingly, we find that the determination of paternity over Ariana in the order of support in case No. CI 14-12 was res judicata on Brandon's paternity and that therefore, the parties were precluded from relitigating the issue here.

Further, neither party appealed the final judgment in case No. CI 14-12 or claims that the judgment was void for want of jurisdiction; so, the judgment is not subject to collateral attack by relitigation in this case, absent compliance with § 43-1412.01 or a motion to vacate or modify the decree in light of fraud, mistake, or as set forth in Neb. Rev. Stat. § 25-2001 (Reissue 2016).[22] When a judgment is attacked in a way other than by proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.[23] Even if erroneous, a judgment is not subject to collateral attack unless it is void, such as would be the case where a judgment is entered without jurisdiction over the person or subject matter.[24] Therefore, the court did not abuse its discretion in finding that Brandon was Ariana's legal father.

In addition, there is no concern regarding Brandon's due process on the issues because the court was not able to relitigate the paternity determination, absent Brandon's motioning the court to do so on specific bases not present in the record.

Even with the prior determination that Brandon was Ariana's father, we note that in 2008, "the Legislature enacted § 43-1412.01, which overrides res judicata principles and

---

[22] See *Alisha C., supra* note 9.

[23] *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 613 N.W.2d 810 (2000).

[24] *State v. Yelli*, 247 Neb. 785, 530 N.W.2d 250 (1995).

allows, in limited circumstances, an adjudicated father to disestablish a prior, final paternity determination based on genetic evidence that the adjudicated father is not the biological father."[25] We have held that § 43-1412.01 "gives the court discretion to determine whether disestablishment of paternity is appropriate in light of both the adjudicated father's interests and the best interests of the child."[26]

Section 43-1412.01 provides, in relevant part, the following:

> An individual may file a complaint for relief and the court may set aside a final judgment, court order, administrative order, obligation to pay child support, or any other legal determination of paternity if a scientifically reliable genetic test . . . establishes the exclusion of the individual named as a father in the legal determination. The court shall appoint a guardian ad litem to represent the interest of the child.

While Brandon requested genetic testing of Ariana in his counterclaim, he did not request the court to disestablish the final determination of paternity in case No. CI 14-12. Additionally, while he cites to Jessica's testimony that he is not Ariana's biological father, he failed to enter into evidence the results of any genetic testing that may have been performed in this case. Further, the record does not reflect that a guardian ad litem was appointed to represent Ariana or that the court made a determination regarding whether a disestablishment of paternity was appropriate. Therefore, assuming without deciding that the disestablishment of paternity could have been litigated in this matter, as opposed to in case No. CI 14-12, the court did not abuse its discretion in not ruling on whether the disestablishment of paternity was appropriate under § 43-1412.01. As a result, there is no merit

---

[25] *Stacy M., supra* note 14, 290 Neb. at 146, 858 N.W.2d at 857.

[26] *Id.* at 146-47, 858 N.W.2d at 857.

to Brandon's assignments of error regarding finding Ariana to be a child of the parties.

### (b) Court Properly Considered Support, Custody, Parenting Time, Expenses, and Income Tax Deductions for Ariana

Brandon asserts that ordering him to provide support for Ariana and determining custody, parenting time, expenses, and income tax deductions regarding her were erroneous because he has no rights or duties regarding her.

Because Brandon's argument that the court erred in determining that he was Ariana's legal father was without merit, the assignment of error regarding child custody, parenting time, child support, income tax deductions, and other expenses is without merit. Neb. Rev. Stat. § 42-364 (Reissue 2016) grants the court the authority to determine child custody, parenting time, and child support. Additionally, § 43-1402 states that "[t]he father of a child whose paternity is established . . . shall be liable for its support to the same extent and in the same manner as the father of a child born in lawful wedlock is liable for its support."

[16-18] Further, under Nebraska law, a state court having jurisdiction in a dissolution action has the power to allocate tax dependency exemptions as part of the dissolution decree.[27] A tax dependency exemption is nearly identical in nature to an award of child support or alimony.[28] It has also been held that childcare costs may be awarded as an incident to child support.[29] Therefore, these assignments of error are without merit.

---

[27] *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). See, also, *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005).

[28] *Emery, supra* note 27.

[29] *Cross, supra* note 7.

(c) Court Did Not Abuse Its Discretion
by Declining to Modify Existing
Support Order

In *Robbins v. Robbins*,[30] we held that in a dissolution action brought under the provisions of Neb. Rev. Stat. §§ 42-347 to 42-379 (Reissue 1984), a court had jurisdiction to make an independent evaluation as to child support under § 42-351, but that the court must take into account and give effect to an earlier child support order entered under § 43-512.04 (Reissue 1984). An action for child support, separate from a dissolution action, is governed by § 43-512.04 (Reissue 2008).[31]

At the time we decided *Robbins*, § 42-364 (Reissue 1984), which governed dissolution proceedings, did not require a court to determine child support in any circumstances. Since *Robbins*, the Nebraska Legislature has amended § 42-364(1)(b) (Reissue 2016) to provide, in relevant part, that "[t]he decree in an action involving the custody of a minor child shall include the determination of . . . child support."[32]

[19-21] In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Supreme Court construing and applying that legislation.[33] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[34] In reading a statute, a court must determine and give effect to the

---

[30] *Robbins v. Robbins*, 219 Neb. 151, 361 N.W.2d 519 (1985).

[31] See § 43-512.04(1). See, also, § 43-1412(3).

[32] See 2007 Neb. Laws, L.B. 554, § 32.

[33] *Pittman v. Western Engineering Co.*, 283 Neb. 913, 813 N.W.2d 487 (2012).

[34] *State v. Beitel*, 296 Neb. 781, 895 N.W.2d 710 (2017).

purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[35]

[22] While the plain language of § 42-364 now requires a court to include a determination of child support in its dissolution decree when the action involves custody of a minor child, it does not require the court to make an independent calculation of child support. Because the Legislature was presumed to have had full knowledge of Neb. Rev. Stat. § 43-512.05 (Reissue 2016) and our decision in *Robbins* when it amended § 42-364, we must interpret § 42-364 in light of our holding in *Robbins*.[36] Therefore, we interpret § 42-364 to authorize a court to determine that an existing support order may remain in effect after the court has considered the current earning capacity of each parent and the child support guidelines provided by the Supreme Court.

Here, the order of support in case No. CI 14-12 was already in effect when the court ruled on the parties' dissolution. While the court had jurisdiction to modify the order in its decree, under § 42-364, the court determined that a modification of the existing support order was not appropriate in this case, as discussed more fully in the next section. Therefore, Brandon's argument that the court cannot rely on a previous order of support is without merit.

### (d) Brandon's Due Process Rights Were Not Violated by Court's Determination That Modification of Existing Order of Support Was Not Warranted

Brandon contends that the court denied him due process by preventing him from presenting evidence regarding child support and his paternity of Ariana. He asserts that the court's adoption of the support order in case No. CI 14-12, at

---

[35] *Id.*

[36] See *Robbins, supra* note 30.

Jessica's request, precluded the court from even considering the matters.

[23-25] Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law.[37] Due process does not guarantee an individual any particular form of state procedure; instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.[38] The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.[39]

Brandon argues that the evidence of both his change in income and his subsequently born child shows that the court abused its discretion in not modifying the order.

[26,27] Child support orders are always subject to review and modification.[40] A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.[41]

[28,29] Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.[42] Further, the Nebraska Child Support Guidelines state that "[i]f applicable, earning capacity may

---

[37] *Bryan M. v. Anne B.*, 292 Neb. 725, 874 N.W.2d 824 (2016).

[38] *Id.*

[39] *Id.*

[40] *Incontro, supra* note 4.

[41] *State on behalf of B.M., supra* note 7.

[42] *Id.*

be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities."[43] But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child.[44]

[30] Accordingly, it is invariably concluded that a reduction in child support is not warranted when an obligor parent's financial position diminishes due to his or her own voluntary wastage or dissipation of his or her talents and assets and a reduction in child support would seriously impair the needs of the children.[45] The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby.[46]

We note that no party sought a modification of the support order in case No. CI 14-12. As Brandon argues, Jessica asked the court to continue the support ordered in the preceding case. While Brandon filed a counterclaim, he did not request a reduction of the prior support order. However, because Brandon presented evidence seeking a reduction and the court did consider whether to modify the support order, we will review its decision.

First, we consider Brandon's argument that he was entitled to a reduction in his support obligation based on a child that was born to him during the proceedings of the dissolution action. Neb. Ct. R. § 4-205(E) (rev. 2016) provides that "[s]ubject to [Neb. Ct. R.] § 4-220, credit may be given for biological or adopted children for whom the obligor provides regular support." Neb. Ct. R. 4-220, however, limits the discretion to provide the credit, as follows:

---

[43] Neb. Ct. R. § 4-204 (rev. 2016).

[44] *State on behalf of B.M., supra* note 7.

[45] *Incontro, supra* note 4.

[46] See *State on behalf of B.M., supra* note 7.

An obligor shall not be allowed a reduction in an existing support order solely because of the birth, adoption, or acknowledgment of subsequent children of the obligor; however, a duty to provide regular support for subsequent children may be raised as a defense to an action for an upward modification of such existing support order.

Accordingly, the child support guidelines allow the obligor of an existing support award a deduction for an obligation to support a subsequent child only when the obligee seeks an upward modification of support.[47] Therefore, because Jessica did not seek an upward modification of support, Brandon was not entitled to a reduction of his support obligation.

Second, we address whether the court erred in failing to find that Brandon proved that there was a material change of circumstances warranting a modification of the support order.

The court heard testimony from both parties on their financial circumstances before making its ruling not to modify the support order. Jessica testified that her income had increased by approximately $50 a month, to $1,304 a month, from the existing order to the time of trial. Brandon testified that his monthly income was about $2,600 a month until he was fired for missing work due to medical issues, his monthly income at the time of trial was about $2,000 a month from working a seasonal carpentry job and as a server, and he is actively seeking employment for at least $2,600 a month and has turned down job offers for $13 an hour, or about $2,180 a month.

However, Brandon did not supplement his discovery or submit evidence supporting his reason for the termination of employment or verifying his current income. The child support calculation worksheet itself states that the court will "require copies of [the] last 2 years' tax returns to verify 'total income'

---

[47] *Schwarz v. Schwarz*, 289 Neb. 960, 857 N.W.2d 802 (2015).

figures and copies of present wage stubs to verify the pattern of present wage earnings."[48]

While Brandon testified that his financial position had changed and that it was not the result of bad faith, he did not present any supporting evidence. Further, there was no evidence that the needs of the children had changed, that Brandon's change in income was permanent, or that he suffered any decrease in earning capacity, and the evidence showed that Jessica's financial position had changed only negligibly. Accordingly, we cannot say that the court abused its discretion in finding that Brandon was not entitled to a modification of the existing support order.

Third, because the court provided Brandon the opportunity to present evidence relevant to whether a material change in circumstances had occurred, we find his argument that he was denied due process on the issue to be without merit.

### (e) Summary Remand of Appeal Is Not Required

Brandon contends that by failing to attach a Nebraska child support calculation worksheet to the decree, the court violated § 4-203 of the child support guidelines. Section 4-203 provides that "[a]ll orders for child support, including modifications, must include a basic income and support calculation worksheet 1, and if used, worksheet 2 or 3."

In *Rutherford v. Rutherford*,[49] we considered an appeal from an order modifying the father's child support obligation. In that case, there was no child support worksheet prepared by the trial court in the record and the court's order merely included a calculation of the parties' monthly net income and stated that it extrapolated the income figures and used the child support guidelines to determine the support obligations.

---

[48] Neb. Ct. R. ch. 4, art. 2, worksheet 1, n.1 (rev. 2016). See, also, *Henderson v. Henderson*, 264 Neb. 916, 653 N.W.2d 226 (2002).

[49] *Rutherford v. Rutherford*, 277 Neb. 301, 761 N.W.2d 922 (2009).

We held that the court's failure to complete a worksheet as to the method it used to determine the modification of child support was an abuse of discretion and remanded the cause for the court to complete the applicable worksheet. We reasoned, in part, that "because there is no worksheet in the record, we do not know why the court awarded the amount of support it did, except that the court extrapolated the amount set forth in the guidelines."[50]

Further, we held:

Henceforth, if a trial court fails to prepare the applicable worksheets, the parties are required to request that such worksheet be included in the trial court's order. *Orders for child support or modification* which do not contain such worksheets will on appeal be summarily remanded to the trial court so that it can prepare the worksheets as required by the guidelines.[51]

In this matter, however, the decree ordered Brandon to provide child support for the minor children "pursuant to the current Order of the District Court of Pawnee County in [case No. CI 14-12]." In doing so, the court did not adopt a new child support worksheet or calculations and merely determined that the existing child support order from the paternity action should remain the operative support obligation.

Further, the determination in the dissolution decree—that Brandon shall provide support pursuant to the order in case No. CI 14-12—was not itself an order of support or modification requiring the completion of a worksheet. As stated above, in *Rutherford*, we reasoned that an order imposing or modifying child support shall include any applicable worksheets with the trial court's order so that on appeal we know why the court awarded the amount of support it did. As the Nebraska Court of Appeals has explained, "[p]erhaps the most obvious purpose of this requirement is to ensure that the appellate

---

[50] *Id.* at 305, 761 N.W.2d at 925-26.

[51] *Id.* at 308, 761 N.W.2d at 927 (emphasis supplied).

courts are not left to speculate about the trial court's conclusions. . . . These worksheets show the parties and the appellate courts that the trial court has '"'done the math.'"'"[52]

Here, the record indicates that the prior support order and its accompanying child support worksheet were received into evidence as an exhibit. That exhibit showed the calculations used in case No. CI 14-12 to determine Brandon's child support obligation. The existence in our record of the prior calculation, coupled with the fact that the court did not impose a new child support obligation or modify the previous child support obligation, renders our holding in *Rutherford* inapplicable here. Therefore, this assignment of error is without merit.

We note that while *Rutherford* is not applicable here, there may be circumstances where a child support worksheet is required to show the court's findings that a new support order should not be imposed or a previous support order should not be modified. In addition, it is important that the trial court make clear, as it did here, that no additional child support order is being implemented and that the previous order remains the operative support obligation, so as to simplify the child support collection process.

## 2. BANK DEBT WAS MARITAL DEBT

Brandon contends that it was inequitable to order him to pay one-half of the bank debt, or $411.97. He argues that the collection notice, dated September 18, 2014, and Jessica's testimony that it was marital were insufficient because there was no evidence showing what the debt was for or when it was incurred.

Under Nebraska's divorce statutes, "[t]he purpose of a property division is to distribute the marital assets equitably between the parties."[53] The ultimate test in determining the

---

[52] *Molina v. Salgado-Bustamante*, 21 Neb. App. 75, 82-83, 837 N.W.2d 553, 559 (2013).

[53] Neb. Rev. Stat. § 42-365 (Reissue 2016).

appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.[54]

[31] Under § 42-365, the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.[55]

[32,33] Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties.[56] The burden to show that a debt is nonmarital is on the party making that assertion.[57]

At the hearing, Brandon's attorney questioned Jessica about the debt. Shortly after Brandon's attorney began the questioning, however, Jessica's attorney objected to a question and, without ruling, the court directed Brandon's attorney to "move on." Brandon's attorney neither objected to the court's direction nor made an argument as to why he needed to elicit additional evidence on the subject.

Brandon generally assigned error to the court's not permitting him to respond to Jessica's presentation of evidence. However, an issue not presented to or decided by the trial court is not appropriate for consideration on appeal.[58] Accordingly, we will not consider whether the court erred in preventing Brandon from eliciting further evidence on this issue, because Brandon's attorney did not adequately present the issue to the trial court. Instead, we will consider only the record before us.

---

[54] *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017).

[55] See *Osantowski, supra* note 6.

[56] *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

[57] *Id.*

[58] *Wayne L. Ryan Revocable Trust v. Ryan*, 297 Neb. 761, 901 N.W.2d 671 (2017).

Jessica testified that the bank debt was incurred while the parties were living together. Brandon presented no evidence that the debt was not incurred before the parties separated or that it was not for the parties' joint benefit. Accordingly, Brandon failed to satisfy his burden to show that this debt was nonmarital. Therefore, this assignment of error is without merit.

### 3. DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING JESSICA ATTORNEY FEES

Brandon contends that the court's award of $3,000 for attorney fees to Jessica was an abuse of discretion. He argues that under the relevant considerations for granting attorney fees, the circumstances of this case did not warrant making an award—in light of the short duration of the parties' marriage, the simplicity of issues in the dissolution, and both parties' lack of financial resources.

[34,35] In awarding attorney fees in a dissolution action, a court should consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.[59] Additionally, courts have the inherent power to award attorney fees in certain unusual circumstances amounting to conduct during the course of litigation which is vexatious, unfounded, and dilatory, such that it amounts to bad faith.[60]

While we agree that the issues involved in the dissolution were not overly complex and the marital estate was minuscule, the proceedings lasted nearly 2 years and the attorney fees Jessica incurred were consistent with the proceedings.

---

[59] *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

[60] See *White, supra* note 2.

Further, the court's partial granting of attorney fees was rationally related to the additional expenses incurred regarding the motion to compel and motion for sanctions filed against Brandon for failing to respond to Jessica's discovery and the motion to withdrawal of Brandon's attorney shortly before the scheduled final hearing. Therefore, we conclude that the court did not abuse its discretion by ordering Brandon to pay $3,000 of attorney fees.

## 4. REMAINING ASSIGNMENTS
### OF ERROR

[36] Brandon also generally assigns error to the court's decision as an abuse of discretion and incorrect as a matter of law. Concerning Brandon's specific assignments of error, these assignments are without merit. In regard to any other rulings included in the court's order, we do not consider assignments of error that are not both specifically assigned and argued. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[61]

## V. CONCLUSION

In the order of support entered by the Pawnee County District Court, in case No. CI 14-12, Brandon was ruled to be the legal father of Ariana and ordered to support her. The determination of paternity in case No. CI 14-12 was res judicata on the issue of paternity and could not be challenged in this case, absent Brandon's pleading or motion for specific relief. Accordingly, the court's rulings regarding Ariana were all within its authority in entering the dissolution decree.

Further, while Brandon presented evidence that he was entitled to a modification of the order of support, the court did not abuse its discretion in considering the support order in case No. CI 14-12 and determining that Brandon had not

---

[61] *Waldron v. Roark*, 298 Neb. 26, 902 N.W.2d 204 (2017).

proved that a material change in circumstances had occurred. Because the court did not modify the existing order of support, it was not required to attach a child support calculation worksheet to the decree.

We also conclude that the court did not abuse its discretion in distributing the marital debts or awarding Jessica attorney fees. Finally, the record does not show that Brandon's due process rights were violated regarding any of the issues on appeal. Therefore, we affirm.

AFFIRMED.

WRIGHT, J., not participating.