IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

ROSBERG V. ROSBERG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KELLY R. ROSBERG, APPELLEE,

V.

PAUL A. ROSBERG, APPELLANT.

Filed April 30, 2019.    No. A-17-1229.

Appeal from the District Court for Knox County: PAUL J. VAUGHAN, Judge. Affirmed.

Paul A. Rosberg, pro se.

Kelly R. Rosberg, pro se.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

Paul A. Rosberg, pro se, appeals from an order of the district court for Knox County that found him in willful contempt of court for failure to pay child support. We affirm.

### BACKGROUND

#### SEPARATE DIVORCE APPEAL

Initially we note that, in addition to the present appeal, this court also has before it a separate appeal related to the parties' divorce proceedings (see case No. A-17-909). Thus, we are aware that Paul and Kelly R. Rosberg were married in 1996 and had seven children during their marriage, six of whom were still living at the time Kelly filed for divorce in August 2014. A temporary order was entered on November 21, granting Kelly temporary physical custody of the children and ordering Paul to pay $3,778 per month in child support. Pursuant to the divorce decree entered in July 2017, Kelly received physical custody of the parties' minor children, subject to Paul's reasonable rights of parenting time. Paul was to pay Kelly child support in the amount of

- 1 -

$2,453 per month for the five children who were still minors commencing August 1. Paul was also ordered to pay Kelly alimony of $500 per month for 36 months commencing August 1. Paul filed his notice of appeal in the divorce case on August 27, 2017, and our opinion in that appeal (No. A-17-909) is scheduled to be released the same day as this opinion.

CURRENT CONTEMPT APPEAL

On March 31, 2017, Kelly, pro se, filed a "Motion for Contempt" against Paul. Attached to and referenced in that motion was a September 2016 "Order for Child Support Contempt" wherein the district court stated: On November 21, 2014, Paul was ordered to pay $3,778 per month as child support; the records of the Nebraska Child Support Payment Center reflect that a current delinquency of more than $41,000 for child support existed as of September 12, 2016; and that Paul was gainfully employed at farming earning more than $50 per hour. In that September 2016 order, the court found Paul to be in willful contempt for failing to pay child support and sentenced Paul to serve 180 days in jail beginning September 10, but stated that Paul could purge himself of the contempt by paying $15,000 on October 1, and paying $4,000 each month on the first day of the month for 6 consecutive months beginning November 1; "[e]xecution of the sentence is deferred so long as the purge payments as ordered are timely paid." Also attached to and referenced in Kelly's March 2017 motion for contempt was a December 2016 "Journal Entry/Order" ordering Paul to pay $3,000 per month in spousal support starting December 1, as well as 90-percent of all necessary medical expenses for the minor children. Additional documents attached to and referenced in Kelly's March 2017 motion for contempt were copies of the payment history reports from the Department of Health and Human Services showing that as of March 31, Paul had an outstanding child support balance of $28,036.28 and an outstanding spousal support balance of $10,700.94, and there were copies of various receipts and invoices (some of which were for medical expenses). Kelly alleged that Paul had not complied with the court's orders and she asked that Paul be ordered to appear before the district court to show cause why he should not be held in contempt "again" "for failing to comply with the Purge agreement, and for failing to pay spousal support and reimbursing medical/expenses of 90% to [Kelly] per Order."

The district court entered an "Order to Show Cause" on April 3, 2017, ordering Paul to appear on May 19 and show cause as to why he should not be found in contempt of court for failing to follow the purge agreement and pay spousal support and uncovered costs as ordered in December 2016. There is nothing in our record to show whether or not a hearing took place on May 19, 2017.

The transcript contains various orders of the district court denying various motions filed by Paul. Although the motions are not contained in our transcript, the orders reflect that the motions were for requests such as: seeking leave of court to file a third-party "counter complaint," having the trial judge and another judge recuse themselves, having an expedited hearing on temporary physical and legal custody of the children, having the judge be "[m]entally [e]valuated," holding the judge in contempt, allowing more exhibits past a deadline for exhibits, and having the children "DNA tested."

On August 14, 2017, Paul filed a "Motion to Recall Bench Warrant and Motion to Dismiss [Kelly's] Motion for Contempt," wherein he requested to have "the bench warrant recalled immediately and dismiss [Kelly's] Motion For Contempt filed on March 31, 2017[,] because the

motion does NOT comply with the regulations that are required to initiate a contempt proceeding." A bench warrant does not appear in our transcript in this appeal.

A hearing was held on October 20, 2017, "on a contempt citation that was issued by the Court on a motion filed by [Kelly] for [Paul's] failure to pay child support." The district court did not reference the date of Kelly's motion or the court's "contempt citation," and there is nothing in the record before us in this appeal which shows that a show cause hearing was set for October 20. Thus it is not clear whether this October 20 hearing was related to Kelly's March 31 motion for contempt which was originally set to be heard on May 19. Both parties appeared pro se, although standby counsel was appointed for Paul; Paul was adamant that he did not want the attorney to represent him and that he would proceed pro se.

Paul referenced his August 2017 motion to dismiss and claimed that Kelly's motion for contempt should be dismissed because "there's no affidavit in support." The district court overruled that motion. Paul also said he would proceed "under duress" and demanded his "right to a trial by jury." Paul said that he should be able to call witnesses, but "couldn't call them, I was locked up in jail for a crime I didn't do." The court responded, "[Y]ou were in jail because you didn't show up for court as you were ordered to show up." After Paul continued on about the legality of his jail time, the court said, "[W]e're here today on the contempt proceeding, that's what we're here for today. You knew why you were in jail." Paul continued to argue that "the reason I didn't show up for that contempt of court hearing is because I had to get my appeal filed." The court once again told Paul that he was "getting way off the subject," and that they were going to proceed on the contempt proceeding.

Kelly presented several exhibits to the district court, all of which were received into evidence. Included in the exhibits were payment history reports from the Department of Health and Human Services showing that as of October 10, 2017, Paul had an outstanding balance of $21,876.35 for his spousal support obligation and $46,492.72 for his child support obligation; the last payment made for spousal support was on March 30, and the only payments for child support since July were for $433.60 per month (on a monthly obligation of $2,453).

Also included in Kelly's exhibits were a "Settlement Offer" dated September 21, 2017 (signed by Paul), and an undated letter from Paul to Kelly. Paul objected to the admissibility of these items as settlement offers, but his objection was overruled; he does not challenge the evidentiary ruling on appeal. In the "Settlement Offer," Paul stated that the "divorce decree **WILL** be overturned and there **WILL** be a new trial for various reasons." (Emphasis in original.) His "proposal," in relevant part, was to pay Kelly "$20,000 for 5 years in a row" and to drop "all pending lawsuits and appealed cases" against Kelly in exchange for Paul getting sole custody of the children, Kelly agreeing to "get rid of any spousal support," "get rid of any child support claimed in case 13-57 and 14-52," and withdrawing her motion for contempt proceedings. He also stated, "This settlement offer will be considered before I pay for the bill of exceptions which is about to cost me an additional $10,000." In Paul's undated letter to Kelly, he stated that he had paid "$10,600" to the "court reporter" for a bill of exceptions (presumably in the parties' divorce appeal) and offered to pay Kelly "$100,000 all up front" rather than over 5 years to get the "divorce over quicker." In the letter, he stated that someone was "willing to barrow [sic] me the $100,000."

Paul testified during the contempt proceeding that "[a]pproximately $500" was taken out of his social security check every month, leaving him "only $230 a month." Paul also testified to

a number of things regarding "the last divorce order." The district court told Paul he could "argue those issues on your appeal" and that "[w]e're here on the child support contempt." The court stated, "We're not going to rehash everything that happened in the earlier divorce." Paul stated that he "presently" had "to go without rent" on land he had "an undivided one-sixth interest in" in order to pay accrued debts and "high child support." "I am able to get food stamps and get 75 percent of my . . . medical bills paid and through Medicare, and will soon be on Medicaid because I qualify for it." "I don't have any means to make any money, other than my social security check."

At the conclusion of the hearing, the district court stated that the evidence submitted to the court established Paul had "the ability to raise money." "[Paul] has indicated an ability to raise a hundred thousand dollars, he's also raised $10,000 for the record in this matter, but he has not made any voluntary child support payments since April." "There have been payments received which appear to be intercepts on child -- or on social security."

In its written order filed on October 20, 2017, the district court found that on July 28 (the date of the divorce decree), it entered an order directing Paul to pay $2,453 per month as child support, as well as a percentage of childcare and healthcare costs; that the records of the Nebraska Child Support Payment Center reflect a current delinquency of $46,492.72 as of October 10, the last payment of $433.60 having been made on October 1; and that Paul was capable of employment and had an earning capacity of $50 per hour. The court found Paul to be in willful contempt for failing to pay child support and sentenced him to 90 days in jail beginning November 2. However, Paul could purge himself of the contempt by paying $10,000 on November 1, and paying $5,000 on the first day of each subsequent month for a total of 18 consecutive months. "Execution of the sentence is deferred so long as the purge payments as ordered are timely paid."

In an order filed on October 31, 2017, the district court denied Paul's motion for reconsideration and motion to vacate.

Paul appeals.

## ASSIGNMENTS OF ERROR

Paul assigns numerous errors, many of which may be relevant to his separate divorce appeal, but are not relevant to the current appeal regarding contempt and we will not address them here. Additionally, to the extent Paul makes arguments which he did not also assign as error, those arguments will not be addressed. See *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error).

Relevant to the contempt appeal, Paul assigns, summarized and restated, that the district court erred by (1) denying his request for a trial by jury, (2) denying his motions for the judge to recuse himself, and (3) attempting to "hear the contempt of court filed by Kelly because it was not supported by affidavits." Brief for appellant at 2-3.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt

- 4 -

and of the sanction to be imposed are reviewed for abuse of discretion. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

ANALYSIS

TRIAL BY JURY AND MOTION TO RECUSE

Paul argues that the contempt action should have proceeded via a trial by jury. However, we are unaware of any authority allowing for a trial by jury in a civil contempt action.

Paul also argues that the trial judge should have recused himself. However, we find no abuse of discretion in the judge's decision not to recuse himself, and further, we find nothing in the record to establish bias or prejudice as a matter of law. See *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018) (motion requesting judge to recuse himself on ground of bias or prejudice is addressed to discretion of judge, and order overruling such motion will be affirmed on appeal unless record establishes bias or prejudice as matter of law).

WAS AFFIDAVIT NECESSARY?

Paul also argues, without citing to any authority, that Kelly's "motion lacked an affidavit in support and there never should have been a show cause hearing in the first place." Brief for appellant at 19.

In the "Statement of Facts" section of his brief, Paul references his "Motion to Recall Bench Warrant and Motion to Dismiss [Kelly's] Motion for Contempt," filed on August 14, 2017. Referenced in and attached to his August 2017 motion is Kelly's April 2016 "Motion for Finding of Contempt and for Sanctions" and the district court's June 2016 "Amended Order on [Paul's] Motion to Recall Bench Warrant and Motion to Stay Proceedings." In her April 2016 motion, Kelly claimed that Paul was in willful contempt for failure to pay child support and she asked the court to find Paul in contempt, to impose coercive sanctions upon him tailored to cause him to discharge his arrearage, and to order him to pay Kelly's attorney fees and costs incurred in bringing this motion. In its June order, the district court stated it did not issue a bench warrant, but it did issue a contempt commitment on June 14, and the court considered the motion to recall bench warrant as a motion to recall the commitment order, and granted such motion. The court found that Kelly did not file the appropriate affidavit and application for order to show cause required to initiate a contempt proceeding. The court also found that Paul was not properly served with an "Order to Show Cause" to compel his attendance at the hearing. "Because the proper procedural due process was not followed," the court granted Paul's motion for recall of the contempt commitment. Initially, we note that it is not clear from our record that the court's June order was related to Kelly's April motion. But assuming that the order and motion were related, we note that the district court did not cite any authority for the necessity of an affidavit to initiate a contempt proceeding for failure to pay child support. Furthermore, the lack of an affidavit was not the sole reason for the court's decision to recall the contempt commitment; the decision was also based on the fact that Paul was not properly served with an order to show cause. Although we understand Paul's confusion about why the district court required an affidavit in 2016 but not in 2017 (the contempt action before us now), what happened in the 2016 proceedings are not controlling in this present appeal.

A court that has jurisdiction to issue an order also has the power to enforce it. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh, supra*. A court can issue orders that are necessary to carry its judgment or decree into effect. *Id*. And the power to punish for contempt is incident to every judicial tribune. *Id*. Because the district court had the power to enforce its previous child support order, it had subject matter jurisdiction over this contempt action.

Kelly was within her rights to initiate contempt proceedings against Paul for failure to provide child support. See Neb. Rev. Stat. § 42-370 (Reissue 2016) ("[n]othing in sections 42-347 to 42-381 [including dissolution, separation, annulment, custody, and support] shall prohibit a party from initiating contempt proceedings"). Pursuant to Neb. Ct. R. Pldg. § 6-111(a)(1) (rev. 2014), "Except when otherwise specifically provided by statute, pleadings need not be verified or accompanied by an affidavit." Motion practice is governed by Neb. Rev. Stat. Chapter 25, Article 9(d); nothing in Neb. Rev. Stat. § 25-908 to 25-915 (Reissue 2016) mentions the necessity of an affidavit. Neb. Rev. Stat. §§ 25-2121 to 2123 (Reissue 2016) are the statutes governing contempt actions in general; there is no mention of an affidavit requirement in those statutes. And pursuant to Neb. Rev. Stat. § 42-358(3) (Reissue 2016), "[a] rebuttable presumption of contempt shall be established if a prima facie showing is made that the court-ordered child or spousal support is delinquent." Nothing in § 42-358 requires an affidavit to be filed when contempt proceedings are initiated. Compare Neb. Rev. Stat. § 42-364.15 (Reissue 2016) (enforcement of parenting time, visitation, or other access; motion accompanied by affidavit). Based on the authority above, we find that an affidavit was not required in these circumstances.

WAS PAUL IN CONTEMPT?

Nowhere in the argument section of his brief did Paul contend that the district court erred in finding him in willful contempt for failing to pay child support based on the evidence presented at the contempt hearing. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Fetherkile v. Fetherkile, supra*. See, also, *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015) (pro se litigant will receive same consideration as if he or she had been represented by attorney, and, concurrently, that litigant is held to same standards as one who is represented by counsel). Thus we will review the finding of contempt for plain error. See *Estate of Schluntz v. Lower Republican NRD*, 300 Neb. 582, 915 N.W.2d 427 (2018) (plain error is error plainly evident from record and of such nature that to leave it uncorrected would result in damage to integrity, reputation, or fairness of judicial process). Because the evidence at the contempt hearing demonstrated that Paul had not paid his child support obligation despite having the funds available to do so, we find no plain error and we therefore affirm the district court's finding that Paul was in willful contempt of court.

CONCLUSION

For the reasons stated above, we affirm the decision of the district court.

AFFIRMED.